**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKSON BASEBALL CLUB LLC d/b/a THE JACKSON GENERALS, *Plaintiff*, v. MARVIN GOLDKLANG, MS GOLDKLANG AND CO., INC., *Defendants*. | Civil Action No. 24-00746 **OPINION** December 22, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants' Marvin Goldklang ("Goldklang") and M.S. Goldklang and Co.'s ("M.S. Goldklang" and, together with Goldklang, "Defendants") motion to dismiss the Jackson Baseball Club d/b/a The Jackson Generals' ("Plaintiff" or "Jackson Generals") Amended Complaint (ECF 15, "FAC"). (ECF 18, "Motion to Dismiss" or "Def. Mot.") Plaintiff opposed the motion. (ECF 19, "Opp.") Defendants filed a reply. (ECF 20, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

1

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

    A.  **The Instant Lawsuit**

This suit arises from Defendant Goldklang's alleged breach of fiduciary duty when serving on the negotiating committee ("Negotiating Committee") to renew the Professional Baseball Agreement ("PBA") between Major League Baseball ("MLB") and The National Association of Professional Baseball Leagues, d/b/a Minor League Baseball ("MiLB"). (FAC ¶¶ 1-2, 101-107.) The Jackson Generals is a professional baseball team that was previously affiliated with the MiLB. (*Id.* ¶¶ 42, 53-54.) At all relevant times, Defendant Goldklang served as a member of the MiLB's Board of Trustees ("MiLB BOT"), and as a minority owner of the New York Yankees. (*Id* ¶¶ 2-3.) Defendants also owned and operated three MiLB baseball clubs: the Charleston Riverdogs, the Hudson Valley Renegades, and the St. Paul Saints. (*Id* ¶ 4.) Plaintiff alleges that as a member of the MiLB BOT, Goldklang owed fiduciary obligations "to each and every team that was a member of the MiLB[.]" (*Id.* ¶ 60.)

Before late 2020, the MiLB was comprised of 160 professional baseball teams that maintained affiliations with MLB clubs pursuant to the PBA. (*Id.* ¶ 54.) The PBA, in varying forms, had existed for over 100 years. (*Id.* ¶¶ 7-9.) Each version of the PBA previously ran for a term of years before being renegotiated and, according to Plaintiff, "always, always" got renewed. (*Id.* ¶ 9, *see also id.* ¶ 62.) The conduct of the MiLB teams was principally governed by the National Association Agreement (the "NA Agreement.") (*Id.* ¶ 55.) The 160 MiLB teams were split into five "echelons" that corresponded to the value and level of their affiliation with the MLB

---

[1] The facts and procedural history are drawn from the First Amended Complaint (ECF 15) and documents integral to or relied upon by the FAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the FAC are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

2

clubs. (*Id.* ¶¶ 10-14.) In 2019, Plaintiff was a "Double-A" team valued at approximately $25 million. (*Id.* ¶ 11.)

In 2019, the MiLB, facing the expiration of the 2004 PBA, began negotiating with the MLB. (*Id.* ¶¶ 63-64.) Defendant Goldklang served on the committee that was formed to negotiate with the MLB. (*Id.* ¶ 6.) Plaintiff alleges that MiLB entered the negotiations for the 2020 PBA with "considerable bargaining power" because (1) MLB would have no "viable alternative" for accessing players absent a deal with MiLB; (2) MiLB's ticket tax was paid to MLB for the salaries and costs of their players; and (3) MiLB paid for the "transportation and lodging" of MLB players. (*Id.* ¶ 65.) Plaintiff further alleges that MLB signaled a willingness to enter another PBA early in the negotiations. (*Id.* ¶ 25.) Plaintiff also maintains that at all relevant times, MiLB's President Pat O'Conner ("O'Conner") had an explicitly stated goal of preserving the then-existing structure of MiLB. (*Id.* ¶¶ 25, 68.)

Despite these favorable circumstances, Plaintiff alleges that Goldklang "demanded to take control of negotiations with MLB" and focused on "enhancing the economic outcome" for only some, but not at all, of the MiLB teams. (*Id.* ¶¶ 69-72, 87.) In May 2020, the Negotiating Committee introduced a proposal to the MLB that eliminated 40 MiLB teams. (*Id.* ¶¶ 73-78.) Following this proposal, O'Conner accused the Negotiating Committee of violating the NA Agreement and ultimately resigned. (*Id.* ¶¶ 81-83, 91.) On February 12, 2021, following negotiations, MLB announced that it would establish a new minor league that would only carry over 117 of the 160 clubs. (*Id.* ¶¶ 17-19.) The remaining forty-three cubs (the "abandoned clubs"), including Plaintiff, lost their affiliations with MLB teams. (*Id.* ¶ 17.) The teams in which Defendants held a financial interest retained their affiliation with the MLB. (*Id.* ¶¶ 89, 92.) Plaintiff

3

alleges that it lost all $25 million of its value as a result and the team is now defunct for all intents and purposes. (*Id.* ¶¶ 22, 93.)

According to Plaintiff, Defendant had a fiduciary duty to MiLB by virtue of his service on the Board of Trustees and the Negotiating Committee. (*Id.* ¶ 115.) Plaintiff alleges that Defendants' actions throughout the negotiation process amounted to a breach of fiduciary duty. (*See id.* ¶¶ 74-79, 95, 101-104, 106-108, 112, 114.) Specifically, Plaintiff alleges that Goldklang failed to negotiate on behalf of the interests of the entire MiLB and instead enriched himself by enhancing the value of the clubs he owned. (*Id.* ¶ 106; *see also id.* ¶ 27 (alleging that Defendant used his position on the committee to inflate the value of the clubs he owned and enrich himself by $70 million); *id.* ¶¶ 10, 12, 14-15, 28, 51-52, 88 (alleging that the MiLB teams Defendant owned and operated gained market value following the new minor league agreement).) Plaintiff further alleges that although O'Conner expressed his desire to preserve the then-existing structure of MiLB (*id.* ¶ 25), Defendant Goldklang put pressure on O'Conner to form a Negotiating Committee of "self-interested" MiLB owners, rather than recruit independent lawyers and negotiators to act on behalf of all 160 teams. (*Id.* ¶¶ 27-28, 36-37, 39-41.) Finally, Plaintiff alleges that throughout the process Goldklang took steps to expressly exclude O'Conner and remove him as President, which caused O'Connor's resignation. (*Id.* ¶¶ 31-34.)

Plaintiff brings one cause of action against Defendants for breach of fiduciary duty. (*Id.* ¶¶ 101-120) Defendants moved to dismiss Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Def. Mot. 10.) Plaintiff filed an opposition on April 25, 2025 (ECF 19), and Defendants filed a Reply on May 9, 2025. (ECF 20.)

4

### B. *Sports Enterprises Inc. v. Marvin Goldklang*

On April 19, 2023, Sports Enterprises, Inc. ("SEI"), the owner of abandoned MiLB team the Salem-Keizer Volcanoes, filed suit in this district against Goldklang and M.S. Goldklang for breaching the NA Agreement and breach of fiduciary duty, among other claims. *Sports Enters., Inc. v. Goldklang*, No. 23-02198 (Apr. 19, 2023); *see also* ECF 18-5, Motion to Dismiss Ex. 3. ¶¶ 63- 64, 68-69, 74-75. On March 18, 2024, this Court granted Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) and provided Plaintiff 30 days to amend. *Sports Enters., Inc. v. Goldklang*, No. 23-02198, 2024 WL 1157842, at *4 (D.N.J. Mar. 18, 2024) ("*SEI I*"). On April 17, 2024, Plaintiff filed a Second Amended Complaint, in which it streamlined its action to a single claim for breach of fiduciary duty against Goldklang. *See Sports Enters., Inc. v. Goldklang*, No. 23-02198, 2025 WL 262105, at *2 (D.N.J. Jan. 22, 2025) ("*SEI II*"). This Court granted Defendant's motion to dismiss in *SEI II* on January 22, 2025, finding that Plaintiff had not alleged that Goldklang owed it a fiduciary duty. *Id.* On February 19, 2025, SEI filed a notice of appeal of the Court's decision in *SEI II*. *See Sports Enters., Inc. v. Goldklang*, No. 23-02198, ECF 43 (Feb. 19, 2025). That appeal is pending.

### II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not

5

impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. <u>ANALYSIS</u>

#### A. <u>Choice of Law</u>

Before addressing Plaintiff's claim, the Court must first determine which state law applies. To do so, this Court applies the choice-of-law rules of New Jersey. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013); *Shapiro v. Logitech, Inc.*, Civ. No. 17-673, 2019 WL 397989, at *6-7 (D.N.J. Jan. 31, 2019). "New Jersey has adopted the [two-part] 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws." *Maniscalco*, 709 F.3d at 206 (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008)). The first step of the inquiry is to determine whether an actual conflict exists. *See Camp*

*Jaycee*, 962 A.2d at 460 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern*, 471 F.3d at 428.

Plaintiff alleges that Florida law governs pursuant to the internal affairs doctrine. (*See* FAC ¶¶ 2, 53.) Although the elements for a claim of breach of fiduciary duty are substantively the same under New Jersey and Florida law, *see Manetta v. Navient Corp.*, No. 20-7712, 2021 WL 2886115, at *3 (D.N.J. July 8, 2021), the Court agrees with Plaintiff.

"The internal affairs doctrine serves as a 'conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.'" *Krys v. Aaron*, 106 F. Supp. 3d 472, 484 (D.N.J. 2015) (quoting *Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982)). Under this doctrine, New Jersey courts direct that "the law of the state of incorporation [governs] internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005)) (citation omitted). Because the MiLB is a corporation formed under Florida law (FAC ¶ 53), the internal affairs doctrine dictates that Florida law applies to Plaintiff's claim for breach of fiduciary duty.

### B. Plaintiff's Claims

The FAC includes one cause of action for breach of fiduciary duty. (FAC ¶¶ 100-120.) Although styled as a single cause of action, the allegations in the FAC are separately made against (1) Goldklang for breach of fiduciary duty and (2) M.S. Goldklang for aiding and abetting Goldklang's breach of fiduciary duty. (FAC ¶¶ 115-116.)

As both parties acknowledge, the issues alleged in the FAC are substantially similar to those previously adjudicated by this Court in *SEI I* and *SEI II*. The Court applies the same reasoning in its analysis here.

1. **Breach of Fiduciary Duty**

In order to state a claim for breach of fiduciary duty under Florida law, Plaintiff must allege (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages proximately caused by that breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted.) "'A fiduciary relationship arises when confidence is reposed by one party and trust accepted by the other.'" *White Cap, L.P. v. Heyden Enters., LLC*, No. 23-14248, 2023 WL 11956289, at *4 (S.D. Fla. Nov. 14, 2023) (quoting *Knezevich v. Carter*, 805 F. App'x 717, 726 (11th Cir. 2020)). Under Florida law, "[a] fiduciary relationship may be either express or implied." *Maxwell v. First United Bank*, 782 So. 2d 931, 933 (Fla. Dist. Ct. App. 2001) (citing *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515 (Fla. Dist. Ct. App. 1994)). While an "[e]xpress fiduciary relationship[ ] [is] created by contract…or…by legal proceedings", an implied fiduciary relationship arises "based on the circumstances surrounding the transaction and the relationship of the parties[.]" *Id.* (citations omitted).

The Court agrees with Defendants that Plaintiff failed to properly allege Goldklang owed it a fiduciary duty. (*See* Defs. Mot. at 13-24; Reply at 2-9.) Plaintiff alleges that Goldklang, as member of the MiLB Board of Trustees, was "entrusted as a fiduciary with protecting the interests of all 160 member-teams of MiLB and the 14 member-leagues." (FAC ¶ 2.) In its opposition to the Motion to Dismiss, Plaintiff argues that this Court should extend principles applicable to for-profit directors to Goldklang and likens the Jackson Generals to a "shareholder" of a for-profit corporation. (*See* Opp. at 4-11.) This argument fails for four reasons.

8

First, although Plaintiff asserts for-profit directors owe a fiduciary duty to shareholders, it does not cite to any cases under either Florida or New Jersey law holding that nonprofit corporations owe individual members a fiduciary duty. (*See* Opp. at 4-10.) The Jackson Generals contend, however, that "'members of either type of corporation [for-profit or not for-profit] should be treated equally.'" (Opp. at 8 (quoting *Fox v. Pro. Wrecker Operators of Fla., Inc.*, 801 So. 2d 175, 180 (Fla. Dist. Ct. App. 2001)). But the court in *Fox* held that the plaintiff had standing to derivatively sue the nonprofit defendant, and did not directly address the question of whether the nonprofit defendant individually owed the plaintiff a fiduciary duty. *See Fox*, 801 So. 2d at 180-81; *see also Stewart v. Am. Ass'n of Physician Specialists*, No. 13-01670, 2014 WL 2197795, at *6 (C.D. Cal. May 27, 2014) (noting that *Fox* does not stand for the proposition that directors of a not-for-profit corporation owe their members fiduciary duties). And other district courts have generally remarked that "the relationship between a large membership organization…and its members is typically an ordinary business relationship, not one of special trust or confidence creating fiduciary duties." *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 10 (D.D.C. 2020) (citations omitted).

Second, Plaintiff's argument that Goldklang was the equivalent of a for-profit director under Fla. Stat. Ann. § 617.0830[2] also fails. (Opp. at 6-8.) As this Court noted in *SEI II*, "[c]ase law supports the proposition that [the duty set forth in Fla. Stat. § 617.0830] is limited to the entity and does not extend to the entity's members." *SEI II*, 2025 WL 262105, at *2 (citing *Stewart*, 2014 WL 2197795, at *6).[3] Additionally, the Court declines to treat Plaintiff as a corporate shareholder

---

[2] Fla. Stat. Ann. § 617.0830 states, in relevant part, "(1) A director shall discharge his or her duties as a director, including his or her duties as a member of a committee: (a) In good faith; (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) In a manner he or she reasonably believes to be in the best interests of the corporation."
[3] The *Stewart* court acknowledged that "[o]ften it is the members of a not-for-profit corporation…who are most directly affected by a fiduciary breach by officers or directors[,]" but noted that "Florida has remedied that ill by

9

simply because Florida law imposes the same duties upon nonprofit directors as it does upon for-profit directors of corporations, as Plaintiff suggests. (*See* Opp. at 6-8 (citing Fla. Stat. Ann. §§ 607.0830, 617.0830)).

Third, even if Plaintiff correctly asserts that *Fox* or § 617.0830 contemplate direct action suits against nonprofit directors, Plaintiff does not plausibly allege that it was a member of the NA Agreement such that the MiLB BOT or Goldklang owed it a fiduciary duty. Jackson alleges that the MiLB BOT owed a fiduciary duty to both the MiLB leagues and teams (FAC ¶¶ 2, 103-05), but the NA Agreement defines its "members" as the MiLB leagues, not the MiLB teams. (*See* Reply at 7-8 (citing NA Agreement § 21.01[4] (stating that "[a]ll leagues are parties to this Agreement" and identifying each of the "leagues" as "parties to this Agreement") (emphasis added); *id.*, § 10.01 (applications for membership in the NA "must state the name of the applicant league").) Plaintiff alleges that "each club of the National Association is a member of the National Association…the NA Agreement continuously refers to such clubs (e.g. the Generals) as "member clubs" or "National Association clubs." (FAC ¶ 103 (citations omitted).) But the NA Agreement refers to "each league" and "*its* member clubs," and does not otherwise refer to clubs as "members" of the NA Agreement.[5] (*See* ECF 18-3 (NA Agreement), *e.g.*, §§ 10.01, 10.02, 10.03, 10.05, 10.06, 12.01; *see also* § 21.01 (listing parties to agreement).)

---

statutorily providing members with standing to challenge directors' actions that may constitute breaches of their fiduciary duties" under Fla. Stat. Ann. § 617.0304(2)-(3). *Stewart*, 2014 WL 2197795, at *7.

[4] Although a court typically does not consider matters outside the pleadings when deciding a motion to dismiss, "a court may consider documents that are integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (citations omitted).

[5] Under both New Jersey and Florida law, a Court can rule on the interpretation of a contract on a motion to dismiss if the contract is unambiguous. *See Wark v. J5 Consulting, LLC*, No. 23-00266, 2023 WL 6366731, at *8 (D.N.J. Sept. 29, 2023) (applying New Jersey law); *Aerospace Precision, Inc. v. NexGen Aero, LLC*, No. 17-61106, 2017 WL 10186583, at *3 (S.D. Fla. Sept. 27, 2017) (applying Florida law).

Finally, the FAC does not plausibly allege that any other type of fiduciary relationship existed between Plaintiff and Goldklang. Under Florida law, a fiduciary relationship arises where "a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused)…." *Great Lakes Ins. SE v. Boat Rental Miami, Inc.*, No. 19-20623, 2020 WL 264674, at *7 (S.D. Fla. Jan. 17, 2020) (quoting *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (alterations in original)). The FAC contains only conclusory allegations that Goldklang, in his position as an MiLB BOT member, had a fiduciary relationship with each individual MiLB team, including the Jackson Generals. (*See, e.g.*, FAC ¶¶ 2, 25, 58, 101-02.)

For the foregoing reasons, the Jackson Generals have not plausibly alleged that Goldklang owed it a fiduciary duty and, as such, have not alleged that Goldklang breached this duty.

### 2. Aiding and Abetting Breach of Fiduciary Duty

Because Plaintiff has not stated a claim for breach of fiduciary duty against Goldklang, Plaintiff's claim against M.S. Goldklang for aiding and abetting Goldklang's breach of fiduciary duty also fails.

"Florida law recognizes a cause of action for aiding and abetting the breach of a fiduciary duty." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) (citations omitted). To state a claim for aiding and abetting the breach of a fiduciary duty, a plaintiff must allege: "1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Id.* (citing *Arbitrajes Financieros, S.A. v. Bank of America, N.A.*, 605 Fed. App'x 820, 824 (11th Cir. 2015); *Hearn v. McKay*, 642 F.Supp.2d 1330 (S.D. Fla. 2008), *aff'd*, 603 F.3d 897 (11th Cir. 2010)).

Plaintiff has not alleged a fiduciary duty on the part of Goldklang, and therefore its claim against M.S. Goldklang fails on the first element.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED.** Plaintiff's Amended Complaint is **DISMISSED** without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Within thirty (30) days, Plaintiff may file an amended complaint. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:      Clerk
cc:        Andre M. Espinosa, U.S.M.J.
           Parties